**COUNTY ASPHALT, INC., Plaintiff-Appellant,**

v.

**The LEWIS WELDING & ENGINEERING CORPORATION, Defendant-Appellee.**

**No. 742, Docket 35833.**

United States Court of Appeals, Second Circuit.

Argued April 26, 1971.

Decided June 11, 1971.

---

William E. Kelly, New York City (Casey, Lane & Mittendorf, New York City, on the brief; and Smith, Ranscht, Pollock & Barnes, White Plains, N. Y., on the brief), for plaintiff-appellant.

Edward E. Rigney, New York City (Alexander & Green, New York City, Eugene Z. DuBose, Klaus H. Jander, Richard T. McDermott, New York City, of counsel), for defendant-appellee.

Before HAYS and FEINBERG, Circuit Judges, and BLUMENFELD, District Judge.*

BLUMENFELD, District Judge:

This is a diversity action claiming damages for negligence, breach of contract and breach of warranties arising out of the defendant's performance of agreements to furnish and erect two asphalt plants for the plaintiff. The de-

---

* Of the District of Connecticut, sitting by designation.

fendant answered with a general denial and counterclaimed for the unpaid balance of the contract price, damages for conversion of the plants, and for the rental value of an old plant which the plaintiff had traded in as partial consideration for the new ones. After a trial to a jury, it returned a general verdict for the defendant on its first counterclaim accompanied by answers to special interrogatories. The trial judge entered judgment on the verdict and later amended it to include prejudgment interest, 323 F.Supp. 1300. We find no error and affirm the judgment.

## I.

To consider what the plaintiff urges as error committed by the District Court in interpreting the jury's answers to the interrogatories, it is necessary to set out a brief over-view of the facts.

In December of 1964, the plaintiff, which had several asphalt plants, decided to replace two of them, one at Tarrytown and another at West Nyack, New York, with new equipment so as to be able to comply with newly adopted New York State specifications for base and finish materials used for road building.[1] After direct negotiations between the parties, it was agreed that the defendant would furnish and erect two asphalt plants at West Nyack and Tarrytown for $460,000 in cash and the two old plants which the defendant accepted as trade-ins. A separate written contract for the purchase of each plant was executed, each containing identical terms insofar as the issues raised here are concerned.

At the outset, the defendant was faced with the problem of obtaining unionized workers at West Nyack and Tarrytown. To meet that difficulty, the parties entered into an oral supplemental agreement under which the plaintiff would act as the nominal employer of such workers as the defendant requested, and back-charge the defendant for the expenditures for labor and materials which it incurred on its behalf. The principal fac-

tual issues at trial were whether the defendant had substantially performed its contracts and whether it was guilty of breaches of warranties, with respect to the quality and performance capabilities of the plant equipment. Not in dispute was the fact that the plaintiff owed a balance of $385,229.25 on the purchase price before set-off of the back-charges for labor and materials.

The defendant counterclaimed for this unpaid balance of the purchase price and for the rental value of one plant which the plaintiff had continued to use after it had transferred it to the defendant as part of the purchase price. In addition, the defendant sought damages for the plaintiff's conversion of the two new plants brought about by its making and filing a financing agreement pledging the two plants as security for loans from a New York bank in the amount of $600,000 in violation of the contract provision that title was to remain in the defendant until final payment was made.

At the close of a nineteen day trial, the court charged the jury clearly and succinctly on all of the issues in the case. The plaintiff does not assert error in the charge. Its contention that it was error to deny it a jury trial on the question of consequential damages will be considered later.

## II.

At the completion of his charge, the judge submitted to the jury appropriate forms for a general verdict with special interrogatories and directed them to answer the interrogatories and render a general verdict. The jury returned a general verdict for the defendant in the amount of $226,000. Contending that there was an irreconcilable conflict between the jury's answers to the special interrogatories and the general verdict, the plaintiff moved to reduce the judgment to $66,000 or for a new trial. Judge Croake concluded that the general verdict and the replies to the special interrogatories were entirely consistent and har-

1. In general, these consisted of crushed stone of varying sizes with a binder of asphalt.

monious. We agree. The denial of the plaintiff's motion to amend the judgment or for a new trial was correct.

The plaintiff's principal contention on this appeal is that the jury's answers to the interrogatories mandated a reduction of the general verdict for the defendant to the amount of $66,000. The form submitted to the jury, and as answered by them, is shown to the extent that is relevant here:

"Please Read All Questions Before Proceeding to Answer Any of Them.

### "General Verdicts With Special Interrogatories

"I—*Questions in the nature of a general verdict.*

"1. Is the plaintiff (County Asphalt) indebted to the defendant (Lewis Welding) for any amount not offset by the total of backcharges and damages, if any, found by you in your answers to the special interrogatories below?

"Answer (yes or no)   Yes

"1a. If your answer to Question 1 is 'yes,' state the amount in dollars. $226,000

"2. If the answer to Question No. 1 is 'No,' is the defendant (Lewis Welding) indebted to the plaintiff (County Asphalt) for any amount the latter expended over and above the unpaid balance of the purchase price?

"Answer (yes or no)

"2a. If your answer to No. 2 is 'yes,' state the amount in dollars.   $

"II—*Special Interrogatories.*

"1. Was there substantial performance on the part of defendant (Lewis Welding) of the contracts entered into with plaintiff (County Asphalt) on December 22, 1964?

"Answer (yes or no)   Yes

"2. Is there a balance due defendant (Lewis Welding) from the total purchase price of the plants sold and erected at Tarrytown and West Nyack?

"Answer (yes or no)   Yes

"2a. If your answer to Question No. 2 is 'No,' proceed to Question No. 3. If 'Yes,' what is the amount of the balance due the defendant?

"Answer (a dollar amount)   $226,000

"3. Was there a supplemental agreement entered into by the parties wherein the plaintiff (County Asphalt) agreed to supply labor, materials, and equipment as needed by the defendant (Lewis Welding) in the erection of the plants, and to pay for said labor, material and equipment, with the defendant agreeing to repay the plaintiff on being 'backcharged' by it?

"Answer (yes or no)   Yes

"3a. If your answer to Question No. 3 is 'No,' disregard this question and proceed to Question No. 4. If your answer is 'Yes,' what was the reasonable amount that the plaintiff (County Asphalt) should have backcharged the defendant (Lewis Welding) for moneys expended by it in payment for employees, materials, or equipment?

"Answer (a dollar amount)   $160,000

"4. The contracts in suit state:

'* * * The Company will repair or, at its option, replace any part or parts of the equipment which upon examination are determined to be defective or nonconforming under the Company's Warranty and in respect of which the Company was notified in writing, as hereinabove provided, within the warranty period. Such part or parts should, upon notification from the Company, be shipped to the Company, f. o. b. the Company's plant, for its examination.'

"Did the plaintiff (County Asphalt) comply with these provisions by:

"i. Giving notice to defendant (Lewis Welding)?

"Answer (yes or no)   Yes

"ii. Shipping as requested?

"Answer (yes or no)   Yes

"iii. Allowing the defendant (Lewis Welding) reasonable access to the plants for purposes of repair or replacement?

"Answer (yes or no)   Yes

"4a. Did the defendant (Lewis Welding) comply with these provisions by re-

pairing or replacing every defective or non-conforming part of which it was made aware and given opportunity.

"Answer (yes or no)  No

"5. Was the performance by the defendant (Lewis Welding) negligent, as that term has been defined to you in the discharge of its contractual duties?

"Answer (yes or no)  No"

The function of the court in deciding whether an answer is "inconsistent with the general verdict" under Rule 49(b),[2] which is applicable here, was recently stated by us:

> " * * * we must struggle to avoid the finding of inconsistency and 'attempt to reconcile * * * by exegesis if necessary,' the specific responses and the jury's overall judgment as to who should win and who should lose" (cases omitted). Julien J. Studley, Inc. v. Gulf Oil Corp., 407 F.2d 521, 526–527 (2d Cir. 1969).[3]

The plaintiff's theory that the answers to special interrogatories mandate a judgment of but $66,000 is not easy to follow. Although the jury found in answer 2a that a balance of $226,000 was due the defendant, the plaintiff argues that the $160,000 in back-charges found in answer to interrogatory 3a must then be deducted from the $226,000 to leave a remainder of $66,000. But this would amount to a double deduction. The answer to 3a is logically a footnote explanation of the answer to 2a finding the balance due on the purchase price to be $226,000. Since it was not disputed that the unpaid balance of the contract price was $385,229.25, the set-off of $160,000 in back-charges, using round numbers,[4] left a remainder of $226,000. Furthermore, that the jury did not intend a different result is fully confirmed by its answer of "$226,000" to the first general verdict question:

> "Is the plaintiff (County Asphalt) indebted to the defendant (Lewis Welding) for any amount *not offset by the total of backcharges and damages, if any, found by you in your answers to the special interrogatories below?*" (Emphasis added.)

■   The plaintiff advances a bootstrap argument that because of the jury's negative answer to interrogatory 4a, as to whether the defendant replaced *"every* defective or non-conforming part of which it was made aware and given the opportunity" (emphasis added), it must have intended to award damages for the defendant's failure to comply with its warranty.[5]  And so, the argument con-

---

2. Rule 49(b): *"General Verdict Accompanied by Answer to Interrogatories.* The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for fur-

ther consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."

3. In *Studley,* the court was divided not as to this standard but only as to the result reached by its application.

4. The plaintiff's brief points out that its actual out-of-pocket expenses claimed as back-charges amounted to $160,731.41.

5. The plaintiff asserted many damage claims under this provision. The record reveals a maze of interconnecting choices of replacement and repair costs, presenting a challenge that the jury after six hours of deliberation may well have decided was insoluble. More importantly,

tinues, the jury found that such damages amounted to $160,000, as evidenced by its answer to interrogatory 2a, and that that amount must be applied in reduction of the verdict to the defendant. Thus, the plaintiff insists that we go beyond an analysis of the special findings in relation to the verdict, and examine all of the evidence to find support for its theory that the jury must have intended to award substantial damages for the warranty breaches. In Julien J. Studley, Inc. v. Gulf Oil Corp., supra, 407 F. 2d at 526, we did search the trial transcript for the limited purpose of determining whether there was any evidence at all on which the jury could have rested a special finding it made in support of its verdict. But it is misleading to argue from that case that we may affirmatively fashion special asymmetrical findings on our own from the evidence in order to undermine a jury's general verdict. Our function does not go so far as to search out how or why the jury reached their special findings; but only to whether those they did make are consistent with their verdict. There is nothing inconsistent in answering interrogatory 4a

in the negative while refusing to award any money damages.[6] We cannot assume an answer the jury might have given had it been specifically asked what amount in damages the plaintiff sustained because of any breach of warranty. No such interrogatory was submitted.[7] The jury's failure to find that the plaintiff sustained its burden of proof of its damages cannot be used to cancel out $160,000 of a $226,000 obligation.

In strictness, there are no answers to interrogatories which are inconsistent either with the verdict or with each other so as to justify an amendment of the jury's verdict. Nevertheless, we have taken the step urged upon us by the plaintiff and have studied the record wherein the plaintiff assured us we would find undisputed and uncontradicted evidence establishing its damages for the defendant's warranty breaches amounting to approximately $160,000. To arrive at that figure, the plaintiff relies in large part on the testimony of its expert witness that it would cost approximately $141,000 to make the plants conform to the contracts.[8] Some indication that the

the plaintiff admitted that it had included in the back-charges for which it took credit expenditures for the repair work it claimed had to be done.

6. Indeed, the answers to interrogatory 7 indicate that although a jury may find a wrong to have been committed by one party, an award of damages is not a foregone conclusion.

"7. Did plaintiff (County Asphalt) 'convert' the plants, as the term 'convert' or 'conversion' has been defined to you?

"Answer (yes or no) Yes

"7a. If your answer to Question No. 7 was 'yes,' what damages, if any, were caused defendant (Lewis Welding) by plaintiff (County Asphalt's) conversion which were not listed in your answers to any of the above questions?

"Answer (yes or no) No"

7. If the failure to submit an interrogatory asking the jury to set forth what amount, if any, it found as damages in the event of a negative answer to 4a merits any serious criticism, the plaintiff must share the responsibility. It appears that the general verdicts and special interroga-

tories were submitted on the initiative of the judge, but it is also on the record that he submitted them to counsel sufficiently far in advance to permit a full opportunity for thorough analysis. Indeed, there was some discussion and negotiation about them and a few suggested changes were made before their submission to the jury.

8. The weakness of the argument is also indicated by plaintiff's own motion in the alternative for a directed verdict in favor of the defendant for only $18,229.25 because of the "undisputed, uncontradicted and unimpeached" evidence of damages of $207,000 sustained by the plaintiff due to Lewis' breaches of warranties. The figure of $207,000 combines a claim for $66,000 to replace two dryers plus the $141,000 claimed by the plaintiff's expert witness for other repairs. Thus, the figure of $160,000 for damages does not appear on the record in such a way as to compel the plaintiff's interpretation of interrogatory 2a. Furthermore, our examination discloses evidence and testimony which supports the trial judge's denial of the directed verdict.

jury affirmatively thought otherwise is provided by its answer to the first interrogatory that there was substantial performance of the contracts by the defendant. Beyond that, plaintiff's counsel ignores rules applicable to fact-finders which have long been predominant. When it comes to finding facts from the evidence, juries enjoy a near-total independence. Neither a court, The Conqueror, 166 U.S. 110, 131–133, 17 S.Ct. 510, 41 L.Ed. 937 (1897), nor a jury, Head v. Hargrave, 105 U.S. 45, 49, 26 L.Ed. 1028 (1881), is bound to accept an expert witness' opinion, either as to whether the contract specifications were fulfilled or as to the amount of damages, regardless of whether he is in any way contradicted or impeached.

As stated in Purcell v. Waterman Steamship Corp., 221 F.2d 953, 954 (2d Cir. 1955):

"* * * there is no rule that the testimony of witnesses must be accepted if they are not contradicted and if their credibility is not impeached. It is true that expressions may be found in the books that there is such a rule, but there are a number of decisions in federal courts to the contrary. Indeed, this groundless notion must rest upon the assumption that the only evidence that should count in a decision of fact is the spoken words of the witnesses, so long as these are not in too great conflict with established physical facts. In short, the whole nexus of sight and sound that is lost in a written record is to count for nothing. Such mutilations of the processes of human inference can emanate only from those who suppose that 'legal reasoning' is a mental process unique and unrelated to ordinary affairs. The words that a witness utters, although they must of course be the vehicle of whatever he has to contribute, are again and again of no probative weight at all because of his address, his bearing and his apparent lack of intelligence. We have so often repeated the substance of this that it is obviously impossible to convince the bar that we mean to live up to it" (footnotes omitted).

There was no error in law in the jury's failure to find damages for any possible breach of warranties. Consequently, Judge Croake correctly decided that there was nothing inconsistent between the jury's responses to special interrogatories and their general verdict.

### III.

On the basis of a provision in the contract agreements that the defendant "shall in no event have any liability for loss of profits, losses caused by shutdowns or delays or other similar or dissimilar consequential damages," its counsel moved in advance of trial that all claims of County Asphalt for consequential damages be dismissed and asked the court to make a preliminary determination of the issue. The judge denied the application for a preliminary determination but reserved decision on the motion. After a large part of County Asphalt's case had been presented, including the negotiations leading up to the execution of the contracts, the court, in the absence of the jury, ruled that the claims for consequential damages should be dismissed. We agree.

Plaintiff's contention that it was entitled to a jury determination of the issue of unconscionability is completely without merit. Section 2–719(3) of the UCC specifically provides that:

"Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Whether such a limitation of damages is unconscionable in a particular contract is expressly made a question of law for determination by the court. This is provided for by Section 2–302 of the UCC:

"(1) If the *court as a matter of law finds* the contract or any clause of the

contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears *to the court* that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect *to aid the court in making the determination.*" (Emphasis added.)

■ The official comments of the draftsmen of this section read in pertinent part as follows:

"The present section is addressed to the court, and the decision is to be made by it. The commercial evidence referred to in subsection (2) is for the court's consideration, not the jury's. Only the agreement which results from the court's action on these matters is to be submitted to the general triers of the facts." (UCC § 2–302, Comment 3.)

It is the intent of the Code to give the court the power "to police explicitly against the contracts or clauses which they find to be unconscionable." UCC § 2–302, Comment 1. *And see* Frostifresh Corp. v. Reynoso, 52 Misc.2d 26, 274 N.Y.S.2d 757 (Dist.Ct. Nassau Cty. 1966), rev'd on other grounds, 54 Misc. 2d 119, 281 N.Y.S.2d 964 (1967). Although a hearing at which the parties "shall be afforded a reasonable oppor-

tunity to present evidence," § 2–302(2), may be held at any time after the pleadings disclose the possibility that the limitation of damages may be unconscionable, it has been suggested "that the hearing should not be postponed until the time of trial, and if the objection of unconscionability is raised at the time of trial the evidence thereon should not be heard by the jury, because of the possibility that it might tend to confuse or prejudice the jury. In any event, the fact that a hearing is held does not, regardless of when it is held, alter the status of the question of conscionability as one of law rather than one of fact." Anderson, Uniform Commercial Code, Vol. 1 at 407 (2d ed. 1970).[9]

Plaintiff's argument that its right to a jury trial on the issue of unconscionability is guaranteed by the seventh amendment of the Constitution hardly merits consideration. In 1791, when the amendment was adopted, the discretionary power to grant equitable relief according to the "conscience" of the chancellor was so unmistakably a matter for the equity side rather than the law side of the court no further discussion of the constitutional ground is warranted. Cf. Ross v. Bernhard, 396 U.S. 531, 533, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

■ We have examined plaintiff's other contentions and find them to be without merit, including the contention that the court below exceeded the bounds of discretion in awarding prejudgment interest on the net unpaid balance of the contract price from the time it was due until the date judgment was entered.

Judgment affirmed.

9. Defendant's counsel unsuccessfully sought resolution of the issue of unconscionability by a motion for summary judgment. In advance of trial, he served a motion requesting that the point be determined. Again, on the day the trial was to commence, he requested the court to conduct a hearing and make a determination before impaneling a jury, pointing out the possibility of prejudice which might ensue from the plaintiff's opening statement. Upon assurance from the plaintiff's counsel that "I don't plan to put myself in the position where I will say something to the jury that will not be in at the end of the case," and that his witnesses on lost profits would be his last two, the court again deferred ruling. After the evidence at trial showed that the contracts were the product of hard bargaining between experienced businessmen, with relatively equal bargaining power, and an awareness of the damage limitation provision, the court ruled that the plaintiff was not entitled to prove or recover consequential damages.