Jean KRAFT, Plaintiff,

v.

STATEN ISLAND BOAT SALES, INC. and Silverton Marine Corp., Defendants.

No. 09 Civ. 4157(RJS).

United States District Court, S.D. New York.

May 17, 2010.

---

466

Plaintiff is represented by Lee W. Shelly, Freehold, NJ.

Defendant Silverton Marine Corp. is represented by Craig S. English, Kennedy Lillis Schmidt & English, New York, NY.

Defendant Staten Island Boat Sales, Inc. is represented by Elliot R. Polland, Hoffman, Polland & Furman, PLLC, New York, NY.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Jean Kraft brings this action against Defendants Staten Island Yacht Sales, Inc. and Silverton Marine Corpora-tion (collectively, "Defendants") to recover the cost of repairing a boat that she purchased from Staten Island that was manufactured by Silverton. Plaintiff seeks redress under the following theories: breach of express warranty, breach of implied warranty, violation of the Magnuson–Moss Warranty Act, and violation of New York's General Business Law. For the reasons that follow, the Court grants Staten Island's motion for judgment on the pleadings in full, and grants in part and denies in part Silverton's motion for summary judgment.

### I. BACKGROUND[1]

#### A. Parties

Plaintiff Jean Kraft is a resident of New Jersey. (First Am. Compl. ("FAC") at 1.) Defendant Silverton is a New Jersey corporation that manufactures boats. (*Id.*) Defendant Staten Island is a New York corporation that sells recreational boats to the public and is an authorized dealer of Silverton. (*Id.*)

#### B. The Boat

On September 24, 2004, Plaintiff signed a purchase agreement with Staten Island for the purchase of a 2005 "38 Sport Bridge" power boat manufactured by Silverton with hull identification STN AP126405 (the "Boat"). (Aff. of Elliot Polland Ex. A.) The Boat had been manufactured by Silverton in February 2005 and was sold to Staten Island on February 16, 2005. (*Id.* ¶¶ 2–3.)

Staten Island delivered the Boat to Plaintiff on May 5, 2005. (Silverton's 56.1 ¶ 8.) While piloting the Boat that same day, a Staten Island representative and Plaintiff "discovered that oil and water were leaking into the bilge," which is the

---

1. The following facts are taken from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with the motions. Where only one party's Rule 56.1 statement is cited, the opposing parties do not dispute that fact or have offered no admissible evidence to controvert that fact.

area between the hull and the deck. (Aff. of Jean Kraft ¶ 6; FAC ¶ 1–7).[2] After these problems were reported to Staten Island, a Staten Island mechanic serviced the Boat. (*Id.*) Approximately one month later, gasoline began leaking into the bilge. (*Id.*) Again, Staten Island purported to repair the problem. (*Id.*) During the summer and fall of 2005, Plaintiff informed several employees and officers of Staten Island that water continued to leak into the bilge. (*Id.* ¶ 9.) Then, in late 2005 or early 2006, Plaintiff met two Silverton executives at a boat show and complained of continued problems with the Boat, including the water leak. (*Id.* ¶ 10.) They replied that Staten Island would fix the problems. (*Id.*)

While winterizing the Boat in the fall of 2008, a mechanic discovered a water leak—and what Plaintiff contends was the source of bilge water since 2005—in the connection between a fresh water hose and the upper deck sink. (*Id.* ¶ 12.) The water from the faulty connection "drained down the port side of the boat to the bilge below." (*Id.*) The mechanic fixed the connection and the leak stopped. (*Id.*) Soon thereafter, Kraft was informed that black mold had developed in the hull of the Boat. (*Id.*) Plaintiff attributes the growth of this mold to the various water leaks and specifically to the faulty connection with the upper deck sink. (*Id.* ¶ 13.) Liberty Landing Marina, the marina in New Jersey which had found the leak in 2008, estimated that cleaning the mold from the Boat would cost $61,950.00. (Kraft. Aff. Ex. C.)

Defendants maintain that this scenario is impossible for two reasons: (1) during previous maintenance and repair, no fresh water was ever discovered (or reported) in the bilge (see Aff. of Michael Greco ¶ 9), and (2) because of the design of the Boat, water leaking from the upper deck sink could not have made its way to the area where mold was found (*see* Aff. of Kevin Zebrowski ¶ 34). Plaintiff states, however, that "[e]ver since I took delivery of the boat, I continued to have a problem with water leaking into the bilge. I was continually assured by Michael Greco, the service manager for Staten Island Boat Sales, that the water leak had been corrected and that any water in the bilge was either rain water or wash water." (Kraft Aff. ¶ 12.) Furthermore, the Liberty Landing mechanic who found and fixed the leak recreated the leak and confirmed that the water from the hose did indeed make its way into the bilge. (Aff. of Todd Frankhouser ¶¶ 2–4.)

### C. The Contracts and Warranties

Three separate documents are relevant to Plaintiff's claims against Defendants. First, Plaintiff entered into the purchase agreement with Staten Island on September 24, 2004. Second, on May 5, 2005, Plaintiff received and signed a Silverton warranty registration form. (Zebrowski Aff. ¶¶ 10–11.) Finally, Plaintiff received a pre-delivery service record ("PDSR") for the Boat, which is a "checklist [that] the retailer completes and sends to Silverton when the boat is sold to the consumer." (Silverton's 56.1 ¶¶ 15–16.)

The purchase agreement between Plaintiff and Staten Island, signed on September 24, 2004, contained a disclaimer-of-warranties clause, which reads:

DEALER MAKES NO WARRANTIES EXPRESS OR IMPLIED OF, IN AND TO ANY BOAT OR ITEM PURCHASED HEREUNDER AND NO

---

**2.** The First Amended Complaint contains numbered paragraphs, but the numbering begins at "1" for each separate count. Accordingly, the Court will cite to paragraph one of count one as "¶ 1–1," and paragraph one of count two as "¶ 2–1," and so forth.

WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE INTENDED. WARRANTY, IF ANY, OF ANY ITEM PURCHASED HEREUNDER SHALL BE SOLELY THE WARRANTY GIVEN BY THE MANUFACTURER.

(Poland Aff. Ex. A (capitalization in original).) The agreement is signed by Plaintiff and a representative of Staten Island.

On May 5, 2005, Plaintiff acknowledged receipt and the terms of Silverton's warranty by signing a warranty registration form. (Zebrowski Aff. ¶ 10, Ex. 1.) Plaintiff's signature appears on the line labeled "Owner," and she checked the following boxes that appeared directly above her signature: "OWNER RECEIVED COPY OF THE PRE–DELIVERY SERVICE RECORD" and "OWNER HAS RECEIVED, READ, AND UNDERSTANDS THE SILVERTON MARINE CORPORATION WARRANTY PRIOR TO THE SALE OF THIS VESSEL." (*Id.* Ex. 1 (capitalization in original).) Plaintiff signed again under the text "I understand that it is my responsibility to have read and familiarized myself with the contents of the Silverton Owner's Manual, the various engine and component manuals, and the Silverton Marine Corporation Limited Warranty." (*Id.*) The Silverton limited warranty applicable to the Boat provided:

*LIMITED ONE–YEAR WARRANTY*

SILVERTON MARINE CORPORATION warrants to the first-use purchaser and any subsequent owner during the warranty period that any part manufactured by SILVERTON will be free of defects caused by faulty workmanship or materials for a period of twelve (12) months from the date of delivery to the first-use purchaser under normal use and service. During this period, SIL-

VERTON will repair or replace any part judged to be defective by SILVERTON. (Silverton's 56.1 ¶ 13; Zebrowski Aff. Ex. 2.) The limited warranty contains a further restriction on remedies:

*RESTRICTIONS APPLICABLE TO WARRANTIES*

THESE LIMITED WARRANTIES ARE YOUR SOLE AND EXCLUSIVE REMEDIES AND ARE EXPRESSLY IN LIEU OF ANY AND ALL OTHER REMEDIES AND WARRANTIES EXPRESS AND IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS.... THE PURCHASER ACKNOWLEDGES THAT NO OTHER REPRESENTATIONS WERE MADE TO HIM OR HER WITH RESPECT TO THE QUALITY AND FUNCTION OF THE BOAT. ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES WHICH MAY BE INCURRED ARE EXCLUDED AND PURCHASER'S REMEDY IS LIMITED TO REPAIR OR REPLACEMENT OF ANY PART(S) JUDGED DEFECTIVE BY SILVERTON.

(Silverton's 56.1 ¶ 14; Zebrowski Aff. Ex. 2 (capitalization in original).) Under the terms of Silverton's warranty, Plaintiff was required to present complaints or problems about the Boat to the authorized dealer, Staten Island. (Zebrowski Aff. Ex. 2.)

Finally, Plaintiff signed the PDSR on May 5, 2005, the date on which the Boat was delivered. (Zebrowski Aff Ex. 3.) The PDSR is a Silverton form that contains fifty-three separate checkboxes, which were to be completed by the retail dealer and sent to Silverton when a boat was sold to a customer. (Silverton's 56.1 ¶ 16; Zebrowski Aff. Ex. 3.) In fact, Silverton's limited warranty states that "[t]hese limit-

ed warranties shall not be effective unless the SILVERTON Warranty Registration Form and Pre–Delivery Service Record, which are furnished with each new boat, are filled out completely and returned to Silverton within ten (10) days of delivery." (Polland Aff. Ex. E at 51.) Although printed on Silverton letterhead, the blank line labeled "Dealer" is filled in with Staten Island's information. The checkboxes are divided into six categories: "Pre–Launch," "In–Water," "Prior to Engine Start," "After Engine Start," "Running Water Test," and "Final Check." The boxes themselves have titles such as "prop installation—OK," "no leaks—hull," "fuel system—no leaks," "water heater operational—no leaks," "generator operating properly," and "no leaks—hose test." (*Id.*) All of the boxes are checked on the Boat's PDSR. (*Id.*) The PDSR is signed by Plaintiff and a representative of Staten Island and dated May 5, 2005. (*Id.*)

### D. Procedural History

Plaintiff commenced this action on April 28, 2009. Subsequently, Plaintiff agreed to dismiss her claim under the New Jersey Consumer Fraud Act and file an Amended Complaint, which she did on August 14, 2009. Silverton answered on August 24, 2009, and Staten Island answered the following day. On September 15, 2009, the Court granted Defendants leave to file their respective motions, which became fully submitted on December 1, 2009.

### II. DISCUSSION

In her First Amended Complaint, Plaintiff seeks damages for the growth of the mold in the ship's bilge pursuant to the Magnuson–Moss Warranty Act ("MMWA") and New York state law, as well as attorneys' fees pursuant to the MMWA. Now before the Court is Staten Island's motion for judgment on the pleadings and Silverton's motion for summary judgment.

### A. Jurisdiction

Jurisdiction is proper over Plaintiff's MMWA claims pursuant to 15 U.S.C. § 2310(d) because Plaintiff brings claims that exceed $50,000 pursuant to that Act, 15 U.S.C. § 2301, *et seq.* The Court exercises supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367.

### B. Standards of Review

#### 1. Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed under the same standard applicable to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See In re Ades & Berg Group Investors,* 550 F.3d 240, 243 n. 4 (2d Cir.2008).

On a motion to dismiss under Rule 12(b)(6), the Court must draw all reasonable inferences in plaintiffs' favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007); *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998). Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal,* — U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). Therefore, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949.

Ultimately, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

### 2. Summary Judgment

A court may only grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *accord Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. As such, "if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may

be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir.2007) (internal quotation marks omitted).

### C. Warranty Claims

#### 1. Staten Island

Plaintiff claims that Staten Island breached express and implied warranties under New York's Uniform Commercial Code ("U.C.C.") sections 2–313, 2–314, and 2–315. (FAC ¶ 2–18). Plaintiff also claims that the PDSR constituted a written warranty and that failure to honor that warranty violated the MMWA. (FAC ¶ 1–16).

##### a. U.C.C. Claims

###### i. Applicable Law

Two U.C.C. sections create implied warranties. Sections 2–314 and 2–315 imply warranties of merchantability and fitness for a particular purpose, respectively. *See* N.Y. U.C.C. §§ 2–314, 2–315. Section 2–316 provides that these implied warranties can be excluded by writing if the writing is conspicuous. *See id.* § 2–316(2). A clause is conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it ... Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color.... Whether a term or clause is 'conspicuous' or not is for decision by the court." *Id.* § 1–201(10). In order to waive the implied warranty of merchantability the language must also specifically include the term "merchantability." *See id.* § 2–316(2).

Section 2–313, on the other hand, governs express warranties. It states that the seller can create express warranties by affirmation, promise, description, or sample. *Id.* § 2–313 ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes

part of the basis for the bargain becomes part of the express warranty that the goods shall conform to the affirmation or promise."). In order to demonstrate that an express warranty was created under New York law, a plaintiff "must prove that the statement falls within the definition of a warranty, that she relied on it, and that it became part of the basis for the bargain." *Daley v. McNeil Consumer Prod., Co.*, 164 F.Supp.2d 367, 377 (S.D.N.Y. 2001); *see also Friedman v. Medtronic, Inc.*, 42 A.D.2d 185, 345 N.Y.S.2d 637, 643 (2d Dep't 1973) (requiring "an affirmation of fact or promise by the seller, the natural tendency of which is to induce the buyer to purchase" in order for an express warranty to exist).

### ii. Application

The Purchase Agreement between Plaintiff and Staten Island explicitly states that

> DEALER MAKES NO WARRANTIES EXPRESS OR IMPLIED OF, IN AND TO ANY BOAT OR ITEM PURCHASED HEREUNDER AND NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE INTENDED. WARRANTY, IF ANY, OF ANY ITEM PURCHASED HEREUNDER SHALL BE SOLELY THE WARRANTY GIVEN BY THE MANUFACTURER.

(Poland Aff. Ex. A ¶ 6.)

■ The disclaimer provision meets the standards required by the U.C.C. to waive the implied warranties of merchantability and fitness for a particular purpose. The words "MERCHANTABILITY" and "FITNESS FOR A PARTICULAR PURPOSE" are conspicuously provided in the written disclaimer in all capital letters. *Cf. Sky Acres Aviation Servs., Inc. v. Styles Aviation*, 210 A.D.2d 393, 620 N.Y.S.2d

442, 442 (2d Dep't 1994); *Con Tel Credit Corp. v. Mr. Jay Appliances & TV, Inc.*, 128 A.D.2d 668, 513 N.Y.S.2d 166, 167 (2d Dep't 1987). Furthermore, the disclaimer expressly states that the dealer makes no express or implied warranties and that the only warranty provided to the buyer, if any, is from the manufacturer. Thus, the contract effectively waived any implied warranties.

■ Plaintiff also claims that the PDSR constituted an express warranty between Plaintiff and Staten Island under the U.C.C. (*see* FAC ¶ 1–4), and that Staten Island breached the warranty by failing to repair the water leak (*see id.* ¶ 1–16). The Court rejects Plaintiff's claim that the PDSR is an express warranty for two reasons. First, it would be unreasonable to conclude that the PDSR was part of the basis of the bargain and induced Plaintiff to purchase the Boat, as required under U.C.C. § 2–313, because the PDSR was completed eight months after Plaintiff contracted to buy the Boat and there is no allegation that Plaintiff relied upon the PDSR in purchasing the Boat. (*See* FAC ¶¶ 1–1, 1–4.)

Second, the dealings between the parties made plain that the PDSR's purpose was to trigger Silverton's warranty. The PDSR states: "IMPORTANT: This completed report is required for processing of claims for warranty adjustment." (Zebrowski Aff. Ex. 3.) The purpose of the document, "for processing of claims for warranty adjustment," was clearly stated on the front of the PDSR. The limited warranty between Silverton and Plaintiff also stated, "[t]hese limited warranties shall not be effective unless the SILVERTON Warranty Registration Form and Pre–Delivery Service Record, which are furnished with each new boat, are filled out completely and returned to Silverton within ten (10) days of delivery." (Polland

Aff. Ex. E at 51.) Thus, the related documents confirm that the PDSR was an element of Silverton's limited warranty rather than an inducement for Plaintiff to purchase the Boat. Although Staten Island signed and completed the PDSR when the Boat was delivered to Plaintiff, Staten Island was acting pursuant to Silverton's request for them to complete the form for warranty purposes. Accordingly, the Court concludes that the PDSR did not constitute an express warranty between Plaintiff and Staten Island.

b. The Magnuson–Moss Warranty Act

Plaintiff further argues that even if she did not receive any express or implied warranties under state law, the PDSR constituted a "written warranty" within the meaning of the MMWA, *see* 15 U.S.C. § 2301(6), and thus barred Staten Island from disclaiming any implied warranties under 15 U.S.C. § 2308(a).

■ The MMWA was enacted "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). The act also enables consumers to bring suit in federal court for breach of an implied warranty and to recover attorneys' fees in appropriate cases. *See* 15 U.S.C. § 2310(d). However, "except in the specific instances in which the MMWA expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C.Cir.1986);

*accord Meserole v. Sony Corp. of Am., Inc.*, 08 Civ. 8987(RPP), 2009 WL 1403933, at *10 (S.D.N.Y. May 19, 2009). The MMWA does provide a "regulating rule" in the case of written warranties by setting forth what constitutes a written warranty. *See* 15 U.S.C. § 2301(6). In addition, if a seller issues a written warranty within the meaning of section 2301(6), section 2308(a) prohibits that seller from disclaiming any implied warranties.

■ For substantially the same reasons that the PDSR did not constitute an express warranty under the U.C.C., as stated above, it does not constitute a written warranty within the meaning of the MMWA. The Court's conclusion is further buttressed by the MMWA's explicit allowance for the appointment of representatives by a warrantor:

Nothing in this chapter shall be construed to prevent any warrantor from designating representatives to perform duties under the written or implied warranty: *Provided*, that such warrantor shall make reasonable arrangements for compensation of such designated representatives, but no such designation shall relieve the warrantor of his direct responsibilities to the consumer or make the representative a cowarrantor.

15 U.S.C. § 2307. Thus, the form that Silverton provided to Staten Island in order to activate the Silverton warranty should not be used to transform Staten Island, Silverton's "representative," into a "cowarrantor."[3]

---

**3.** Plaintiff relies principally upon *Marine Midland Bank, N.A. v. Carroll*, 98 A.D.2d 516, 471 N.Y.S.2d 409 (3d Dep't 1984), which found a similar document to constitute a written warranty within the meaning of the Act. *See id.* at 411. At least two other courts have reached a contrary conclusion. *See Leyva v. Coachmen R.V. Co.*, No. 04 Civ. 40141, 2005 WL 2246835, at *4 (E.D.Mich. Sept. 15, 2005);

*Anderson v. Newmar Corp.*, 319 F.Supp.2d 943, 948 (D.Minn.2004). For example, in *Anderson*, the court found that a "Pre–Delivery and Acceptance Declaration," created by and returned to a motor-home's manufacturer, but filled out by a dealer, did not constitute a written warranty under the MMWA "[a]bsent some evidence that [the dealer] used th[e] form for warranty service purposes."

### 2. Silverton

█ Plaintiff claims Silverton breached two express warranties: one created under U.C.C. section 2–313 by affirmation of fact and the other provided in the limited express warranty. Plaintiff also claims that breaches of these warranties constituted violations of the MMWA.[4]

### a. Express Warranty Under the U.C.C.

█ Silverton's motion for summary judgment with respect to Plaintiff's claim for breach of an express warranty under U.C.C. section 2–313 is granted. Although section 2–313 provides various bases for the creation of an express warranty by affirmation of fact, Plaintiff has adduced *no* evidence that Silverton made any such affirmation.[5] Thus, the only express warranty provided to Plaintiff was the limited express warranty.

### b. Limited Express Warranty

█ Under U.C.C. section 2–719, a sales contract may limit the remedies available under express warranties to repair or replacement. *See* N.Y. U.C.C. § 2–719. "The U.C.C. permits this limitation so long as the remedy does not fail of its essential purpose, such as through the inability of the warrantor to repair defects." *Demorato v. Carver Boat Corp.*, 304 Fed. Appx. 100, 102 (3d Cir.2008) (applying New York law) (citation omitted); *accord*

*Cayuga Harvester, Inc. v. Allis–Chalmers Corp.*, 95 A.D.2d 5, 465 N.Y.S.2d 606, 611 (4th Dep't 1983). A limited remedy fails its essential purpose under section 2–719(2) if "the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all." *AT & T v. N.Y. City Human Res. Admin.*, 833 F.Supp. 962, 986 (S.D.N.Y.1993); *see also* U.C.C., § 2–719, cmt. 1 (stating that "it is of the very essence of a sales contract that at least minimum adequate remedies be available" that preserve for a party "at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract"); *Cayuga Harvester*, 465 N.Y.S.2d at 611 (noting that a limited remedy fails its essential purpose "whenever an exclusive remedy, which may have appeared fair and reasonable at the inception of the contract, as a result of later circumstances operates to deprive a party of a substantial benefit of the bargain."). A buyer is not required to show that the seller acted negligently or in bad faith to establish a failure of a limited warranty under 2–719. *See Cayuga Harvester*, 465 N.Y.S.2d at 611. Rather, a buyer can lose a substantial benefit of the bargain where the warrantor is unable to repair the item or does not repair the defect within a reasonable time. *See Roneker v. Kenworth Truck Co.*, 944 F.Supp.

---

*See* 319 F.Supp.2d at 948. To the extent the Court's decision is inconsistent with *Marine Midland*'s interpretation of federal law, the Court finds that decision unpersuasive.

**4.** Plaintiff has abandoned her claim that Silverton breached any implied warranties (Pl.'s Mem. 6), the creation of which require privity under New York law in the absence of personal injury. *See Am. Dredging Co. v. Plaza Petroleum, Inc.*, 799 F.Supp. 1335, 1341 (E.D.N.Y. 1992). Because the MMWA looks to state law to determine whether an implied warranty is created, no claim arises under the Act. *See*

*Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir.1986).

**5.** Although the First Amended Complaint alleges that "[t]he manufacturer and dealer both represented and warranted that the yacht was manufactured in a good and workmanlike manner, that all systems including the on-board pressure system were properly installed and working with no leaks, and that the yacht was fit for its intended use" (FAC ¶ 6), nothing in the Plaintiffs memorandum, Local Rule 56.1 statement, or supporting affidavits and exhibits supports this allegation.

179, 185 (W.D.N.Y.1996). Thus, whether the limited warranty failed in its essential purpose is a question of fact for the jury to determine based on circumstances transpiring after the contract was formed. *See Piper Acceptance Corp. v. Barton,* No. 83 Civ. 4998(CSH), 1987 WL 5801, at \*2 (S.D.N.Y. Jan. 14, 1987); *Cayuga Harvester,* 465 N.Y.S.2d at 611.

Silverton provided Plaintiff with a limited warranty that reads as follows:

*LIMITED ONE–YEAR WARRANTY*

SILVERTON MARINE CORPORATION warrants to the first-use purchaser and any subsequent owner during the warranty period that any part manufactured by SILVERTON will be free of defects caused by faulty workmanship or materials for a period of twelve (12) months from the date of delivery to the first-use purchaser under normal use and service. During this period, SILVERTON will repair or replace any part judged to be defective by SILVERTON. (Silverton 56.1 ¶ 13; Zebrowski Aff. Ex. 2.)

■ In this case, an issue of material fact exists as to both (1) whether Silverton breached the limited warranty and (2) whether the limited remedy caused the warranty to fail its essential purpose. Silverton has submitted work orders delineating all the complaints submitted by Plaintiff during the limited warranty period and listing the repairs performed. (Aff. of Michael Greco ¶ 11 & Ex. 1.) The service manager for Staten Island stated that Plaintiff never complained of a fresh water leak during this twelve-month period, noting that complaints were recorded in the work orders and no such complaint is reflected in these records. (*Id.* ¶¶ 9, 11, 12.) Plaintiff, however, contends that she complained of persistent leaking and that the problem was never fixed during the twelve-month warranty period. (Pl.'s Aff.

¶¶ 6–11.) It appears from the record that she did not know where the leak was originating, but rather simply continued to complain of leaking water. A reasonable jury could conclude that Plaintiff had identified the water leak within the warranty period and that Silverton failed to remedy the problem. Similarly, Plaintiff has adduced sufficient evidence that Silverton's failure to timely remedy the water leak has deprived her of "a substantial benefit of the bargain."

■ Absent any other limitations in an agreement, a breach of a limited warranty that fails its essential purpose allows a buyer to pursue remedies under other U.C.C. provisions as if the limitation on the express warranty did not exist. *See County Asphalt, Inc. v. Lewis Welding & Eng'g Corp.,* 323 F.Supp. 1300, 1309 (S.D.N.Y.1970), *aff'd* 444 F.2d 372 (2d Cir. 1971); *Cayuga Harvester,* 465 N.Y.S.2d at 612.

c. Limitation–on–Remedies Clause

The majority of damages that Plaintiff seeks—the costs associated with removing the black mold from the ship's bilge—are consequential damages. Silverton contends that even if the limited warranty failed its essential purpose, consequential or incidental damages are expressly disclaimed from the warranty. Accordingly, Silverton contends that Plaintiff's remedies, if any, are limited to the cost of repairing the alleged water leak, a total of $115. (Aff. of Kevin Zebrowski ¶ 48.)

■ "Under New York law . . . it is well established that the failure of a limited remedy does not render ineffective all other limitations of liability. Rather a limitation on incidental or consequential damages remains valid even if an exclusive remedy fails." *McNally Wellman Co. v. N.Y. State Elec. & Gas Corp.,* 63 F.3d

1188, 1197 (2d Cir.1995); *accord 430 West 23rd Street Tenants Corp. v. 23rd Assocs.*, 155 A.D.2d 237, 546 N.Y.S.2d 619, 620 (1st Dep't 1989). In a case such as this, the Court will only disregard the limitation-on-remedies clause if it is unconscionable. *See* N.Y. U.C.C. § 2–719(3); *McNally*, 63 F.3d at 1198.[6]

■■■■ Whether the clause is unconscionable is a question of law to be determined by analyzing both the procedure by which the contract was formed and the substantive terms of the agreement. *See McNally*, 63 F.3d at 1198. Unconscionability requires " 'some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " *Id.* (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988)). Transactions deemed unconscionable are often typified by either "disparity in bargaining power, an atmosphere of haste and pressure, [or a] lack of understanding by one of the parties." *Roneker*, 944 F.Supp. at 186. Another court has characterized an unconscionable contract as one that "is ... grossly unreasonable ... in the light of the mores and business practices of the time and place." *Gillman*, 73 N.Y.2d at 10, 537 N.Y.S.2d 787, 534 N.E.2d 824.

Silverton's written limited warranty provided as follows:

### RESTRICTIONS APPLICABLE TO WARRANTIES

THESE LIMITED WARRANTIES ARE YOUR SOLE AND EXCLUSIVE REMEDIES AND ARE EXPRESSLY IN LIEU OF ANY AND ALL OTHER REMEDIES AND WARRANTIES EXPRESS AND IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS.... THE PURCHASER ACKNOWLEDGES THAT NO OTHER REPRESENTATIONS WERE MADE TO HIM OR HER WITH RESPECT TO THE QUALITY AND FUNCTION OF THE BOAT. ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES WHICH MAY BE INCURRED ARE EXCLUDED AND PURCHASER'S REMEDY IS LIMITED TO REPAIR OR REPLACEMENT OF ANY PART(S) JUDGED DEFECTIVE BY SILVERTON.

(Silverton 56.1 ¶ 14; Zebrowski Aff. Ex. 2 (capitalization in original).)

■■■■ Silverton's limitation-on-remedies clause was not unconscionable. Procedurally, there is no allegation that Plaintiff was pressured into accepting the contract as drafted by Silverton or that she did not understand the terms. The exclusion was clearly and conspicuously stated in all capital letters in the agreement. The mere fact that the limited warranty was preprinted and drafted by Silverton without Plaintiff's input is insufficient to render the provision unconscionable. *Cf. Auto Style Leasing Ltd. v. Evans*, No. 92 Civ. 6837(CSH)(LB), 1995 WL 144812, at *5 (S.D.N.Y. Mar. 31, 1995) (declining to declare a lease agreement for a luxury automobile unconscionable despite finding disparity in bargaining power between a corporate lessor and a consumer lessee, with a preprinted contract with fine print).

---

6. The exception to this rule is where the limited warranty fails its essential purpose because of "bad faith or willfully dilatory conduct" by the warrantor. *See Cayuga Harvester*, 465 N.Y.S.2d at 614. Plaintiff, however, does not allege that Silverton acted in bad faith or intentionally delayed repairs until after the one-year limited warranty expired.

The Court is also not persuaded that Staten Island's failure to provide a copy of Silverton's limited warranty to Plaintiff at the time of purchase, rather than at the time of delivery, renders the limitations contained therein unconscionable. Although Plaintiff alleges that she did not receive a copy of the Silverton warranty when she purchased the Boat from Staten Island (Kraft Aff. ¶ 4), Plaintiff signed the Warranty Registration form on May 5, 2005, acknowledging that she had read the Silverton warranty, understood it, and agreed to the terms (Zebrowski Aff. ¶ 10, Ex. 1). There is similarly no indication that Plaintiff objected to the contract terms after familiarizing herself with the warranty. The MMWA and regulations promulgated pursuant to the Act do not undercut this conclusion. The obligation of a warrantor, such as Silverton, to provide a copy of warranties with its product is set forth in 16 C.F.R. § 702.3(b). There is no allegation that Silverton failed to meet these regulations by not providing Staten Island with a copy of its limited warranty in time for Staten Island to comply with its requirements under 16 C.F.R. § 702.3(a). Thus, the Court is not persuaded that *Staten Island's* failure to provide Plaintiff with the warranty—which, standing alone, is not even a violation of 16 C.F.R. 702.3(a)—rendered Silverton's warranty unconscionable.

Similarly, the terms of the limitation-on-remedies clause were not so grossly unreasonable as to render the limitation unconscionable. The parties essentially agreed that Plaintiff would have the burden of identifying defects and bringing them to the attention of Silverton or Staten Island in order to prevent *anyone* from incurring consequential expenses. This type of provision is commonly permitted. *See, e.g., Cayuga Harvester,* 465 N.Y.S.2d at 617–18 (finding similar contract language excluding consequential damages and limiting the remedy to repair or replacement in a sales contract not unconscionable). The Court therefore concludes that the provision is enforceable under section 2–719(3) and that Plaintiff cannot recover consequential or incidental damages.

### d. The Magnuson–Moss Warranty Act

■ Plaintiff contends that the MMWA makes Silverton liable for consequential damages and attorneys fees for violating the terms of the limited warranty. Because Silverton provided only a limited warranty, however, the MMWA does not provide any additional remedies not available under state law. *See Kolle v. Mainship Corp.,* No. 04 Civ. 711(TCP)(MLO), 2006 WL 1085067, at *2 (E.D.N.Y. Apr. 20, 2006) ("When a warrantor, however, as in the case at bar, issues a limited written warranty, Magnuson–Moss provides that the Court must look to State law to determine a plaintiff's entitlement to damages or other equitable remedies.").[7]

The MMWA does allow a Court, in its discretion, to award attorneys' fees for a consumer who succeeds in a case alleging breach of a written warranty, implied warranty, or service contract. *See* 15 U.S.C. § 2310(d)(1)-(2). Although the Court reserves judgment until Plaintiff's remaining claims are resolved, it is skeptical that an award of full attorneys' fees would be appropriate should Plaintiff succeed only in recovering the $115 cost of repairing the leak.

\* \* \*

---

**7.** The federal minimum standards for warranties, set forth in 15 U.S.C. § 2304, do not apply to warranties designated "limited," like that which Silverton provided to Plaintiff. *See* 15 U.S.C. § 2303(a).

Accordingly, Silverton's motion for summary judgment with respect to consequential damages and implied warranties is granted. Silverton's motion for summary judgment with regard to the breach of express limited warranty is denied.

### D. General Business Law § 349

 Plaintiffs final claim asserts that Defendants' representations regarding inspections, conditions, and repairs constitute deceptive practices within the meaning of section 349 of New York's General Business Law. This claim is without merit.

Section 349, commonly referred to as New York's consumer protection act, makes unlawful "[d]eceptive acts and practice in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. "As a threshold matter, plaintiffs claiming the benefit of section 349—whether individuals or entities . . .— must charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). Thus, Plaintiff "must demonstrate that the acts or practices have a broad[ ] impact on consumers at large. Private contract disputes, unique to parties, for example, would not fall within the ambit of the statute." *Id.; see also Genesco Entm't v. Koch*, 593 F.Supp. 743, 752 (S.D.N.Y.1984) (holding that section 349 did not apply to a negotiation to rent Shea Stadium because the action did not affect the public interest where it was a "single shot transaction" and the "only parties truly affected . . . by the alleged misrepresentations . . . [were] the plaintiff and the defendants."). Accordingly, Defendants' respective motions with regard to General Business Law section 349 are granted because Plaintiff has not produced evidence of misrepresentations in this case that impact consumers at large, or for that matter, any party besides Plaintiff and Defendants.

### III. Conclusion

For the foregoing reasons, Staten Island's motion for judgment on the pleadings is granted in full and Silverton's motion for summary judgment is granted in part and denied in part. Remaining to be decided at trial is Plaintiff's claim for breach of express warranty and violation of the MMWA.

The parties shall appear for a pre-trial conference on May 25, 2010 at 3:00 p.m.

SO ORDERED.